Edward J. Kaczynski May it please the Court. My name is Alexandra Shapiro and I represent Appell and Dr. Kaczynski. This case involves very unusual facts. It involves an arm's-length commercial relationship between two parties. The totality of the duties on both sides were set forth and defined by a contract, and that contract expressly disclaimed any fiduciary-like relationship. And Dr. Kaczynski did not breach that contract. What do you mean by that expressly disclaimed? Did it say it's not a — this does not create a fiduciary? It said very specifically, and I use the word fiduciary-like for a particular reason, but the contract states that both parties are — that Dr. Kaczynski is an independent contractor and that he is — there's no agency relationship, there's no joint venture relationship, there's no partnership relationship. So the question is, I don't understand. You're a lawyer representing a client. What is — you're not — you're an independent contractor. No, I'm not, because lawyers and clients have traditional — lawyers have traditional fiduciary duties to their clients. That's one of the relationships, in fact, that the Chessmen Court pointed to as a classic example under the common law of a fiduciary relationship. But you don't need a contract. You don't need a contract to be a fiduciary. Yes, Your Honor, but at — the point is that in this case, this is not like the types of relationships that the Court talked about in Chessmen that are relationships of trust and confidence that trigger the duty. The Court said that it had to have the essential characteristics and be the functional equivalent of a fiduciary duty, and talked about, at common law, the kinds of relationships that include discretionary authority and dependency, and the — the party is supposed to serve the interests of the other party. The beneficiary relies, has de facto control and dominance, and there's confidence imposed on one side and resulting superiority and influence on the other, and then talked about traditional common law relationships like the lawyer and the contract. My point here is that this was an arm's-length relationship. The only duties are not specified — there's no background law. They're only specified in the contract. And the only duties in the contract that are relevant to this were a duty of confidentiality. There was no duty of trust or loyalty. There was no fiduciary relationship or fiduciary-like relationship. And he did not breach the contract. Sotomayor, saying that you're going to hold all this information confidential and the other side agrees, that suggests there's a degree of trust. Doesn't that create an assumption of trust? Well, I respectfully disagree, Your Honor, and I think it's — first of all, in addition to the Chessman case, which said courts should tread cautiously in extending the misappropriation theory to new relationships, we have — this contract, in fact, is directly different from the first contract, which had — which had a non-use provision, but it doesn't create a relationship of trust. It did — it did obligate Dr. Kaczynski to keep the information confidential, and he did keep it confidential. He never breached the contract. Perhaps we might have a different situation if he had breached the confidentiality provision, but that's not what happened here. He complied fully with the contract. And — and so — and — Sotomayor, following up on what Judge Corman says, I would think confidentiality implies not only a nondisclosure of the information to third parties, but also a non-use provision, and also an agreement to use the information only for its approved purpose, and that's what your client is alleged to have gone beyond. But it seems to me both of those obligations are implicit in any confidentiality agreement. What am I missing? I don't think that's the case, Your Honor. And I — and I think the key issue here is that these were arm's-length counterparties in a commercial relationship. And I think this Court and many courts in numerous cases, not just in the insider trading context, but in many fraud contexts and many other contexts, have been very clear that where you have arm's-length counterparties whose — whose obligations are defined in the four corners of the contract, that one does not lightly presume or — there has to be evidence of a relationship of trust that trumps the contract. Sotomayor, what I'm suggesting to you is anybody interpreting a confidentiality agreement would understand it to mean that you can't disclose the information to third parties, and you can only use it for the purpose to which it's been entrusted to you. Well, I disagree, Your Honor, and I think the reason is that in addition to the fact that we have another earlier superseded contract that had different terms and from which, as a matter of law, you can infer that those terms are not in this contract, that that is simply, in this particular context, is — is not accurate. I mean, the particular role of the independent investigator is very different from the role of the trial management team, the — the DSMB and the C5 Research, which was the company that was — was running the drug trial. And certainly, I'm not suggesting that the drug company couldn't have put a provision in the contract barring trading, but they didn't. And then on top of that, you have the fact that the FDA forms assume that someone in this independent investigator role can hold and — and trade stock. So it's the — the — the totality of those circumstances that means that it's — it's a basis here to infer that there's a relationship of trust as well as confidence, because there only — there isn't a long pattern in practice. This isn't a situation where you have, you know, relatives. It's — it's not a common law business relationship like the ones I was discussing with — with Dr. — with Judge Corman. So it's just the contract, and the contract doesn't say that. So — What was — what exactly were his duties? Well, his duties were to administer the drug to his patients, to report the data in compliance with the protocol, which he did, report the data back to the — the — the company. I mean, that was basically — and — and not to share any — disclose any information, confidential information to — to any third parties. And the other thing I want to stress is that although we're not disputing for purposes of the appeal, you know, whether this is material nonpublic information, it was — the information that was disclosed in the two e-mails at issue, it was very unusual and not anticipated by anybody, I think, at the outset, that an independent investigator would have access to the kinds of information that other people at the higher levels could — would have about what was going on throughout the trial worldwide. And so — and in fact, the — these particular disclosures were quite limited compared to what turned out to be the full facts. So I'm just saying that to put a little bit of context. This trading for his own benefit — forget about whether he's — he may own stock or not, but this trading for his own benefit to profit, as he did, undermined the utility of his role that you just described. Well, I don't — I don't think so, Your Honor, but I don't think that's the issue. The issue in this case that — is that the jury was told that a confidential — specifically told that a person has a requisite duty of trust and confidence whenever a person agrees to maintain information in confidence. And that — that was the case that was put to the jury. So they had to assume that because there was a confidentiality provision in this contract, there was a duty of trust and confidence. The jury had — essentially wasn't even given — wasn't even given discretion to determine whether, based on all the facts in the case, for some other reason, a duty of trust could be inferred. And I think that's very important, particularly because, as the — a Friere case that we put in the 20HA letter on, shows the rule in this circuit — and I think this is, you know, to the extent that we talk about a confidentiality agreement, the issue is that a confidentiality agreement may create the requisite duty of trust and confidence, and the question is whether it does on the particular facts of the case. And in there, the agreement — first of all, it was between an employee and an employer, but the agreement actually spelled out that it was a duty of trust and confidence, not just confidence. And we think that it's critical here that these are — that in this kind of a relationship where it's just the four corners of the contract that define the relationship, and he didn't breach the contract, in stark contrast to all the other defendants in cases involving confidentiality agreements where this Court has upheld the convictions. Kennedy. Kennedy. Can I ask you something, a question based on something you just said? Could a — could a — when you would call a properly charged jury, have found a relationship of confidentiality and trust on the basis of a record in this case? I don't think so, Your Honor. I think that the contract's disclaimer precludes it as a matter of law. So you would have been entitled to summary judgment? If it had been a civil case. Right? Right. That's correct. That's what I meant, Laura. Yeah. I just brought up the jury instruction to say, you know, we do, as a fallback, argue that at a minimum there should be a new trial if the Court disagrees that it's clear as a matter of law, because — because the jury charge clearly direct — essentially directed a verdict because of the confidentiality agreement. So that was the reason I brought that up. Is there another — I thought I saw in one of the briefs, there is another — is there another pending case in this Court that involves this issue? It really — it wasn't an insider trading case. It's actually a case in which I just filed a petition for re-hearing on Bonk. But the panel did not reach this issue. So. Good afternoon, Your Honors. May it please the Court, my name is Heather Cherry, and I represent the United States Government in this case. This case is a straightforward application of the misappropriation theory of insider trading. Under this Court's precedent in Chessman, in Falcone, in Afray, Dr. Kaczynski owed a duty of trust and confidence to Rigado when he entered into the CSRA and agreed to keep Rigado's confidential information in strict confidence. Dr. Kaczynski then violated his duty of trust and confidence when he secretly used Rigado's material non-public information to trade in Rigado's public stock for his own benefit, not for the benefit of Rigado, the owner of the confidential information. Twice. Twice, Your Honor, yes, thank you. It was Dr. Kaczynski's self-serving use of Rigado's confidential information that formed the basis of the breach, and it is why he was charged with the criminal conduct that he was charged with and found guilty at trial. As I said just a few minutes ago, I think this Court's precedent is clear, that under Chessman and others that followed, that a confidentiality agreement is enough to establish the duty of trust and confidence. And unless Your Honors have any particular questions. Do those cases hold, in your view, that there's a duty of trust in, where there's a duty of trust and confidence where the agreement, where there's an agreement to maintain information confidential? Is that the, do these cases hold? Yes, Your Honor. I mean, Chessman specifically states that when there's an express agreement of confidentiality, that is enough for the duty of trust and confidence. It makes no mention of a duty not to trade, for example. It is very explicit with respect to a confidentiality agreement being enough to suffice for the duty. But it's at best a CF site, isn't it, because they find that there was not such a relationship in the marital relationship in Chessman, right? They do. They say that if there was an expressed confidentiality agreement in that marriage relationship, then there would, then there could have been. Is that where we look to Falcone, then, for an example of where it does exist? Well, in Falcone, they didn't, they recite Chessman, and they say that there is, that a fiduciary relationship or its functional equivalent exists when there is an explicit acceptance of a duty of confidentiality or where such acceptance may be implied from a similar relationship of trust and confidence. So it restates what Chessman had already laid out in that case. But my question is, does Falcone give us an example of the kind of confidentiality agreement that gets that conclusion? We don't have that kind of an agreement in Chessman. That is correct, Your Honor. In Falcone, there is a confidentiality agreement. And there was some specifics about the passing on of this information with respect to employees at the Hudson News. And your adversary says this case isn't like Falcone. So what's your response to that? Well, I mean, I think it is. I mean, I think that you can specifically see that Dr. Kaczynski signed or entered into the confidentiality agreement. And he promised to take that information and essentially use it for the benefit of Rigotto. He was not supposed to use it for any other purpose, as the CSRA specifically lays out. And he certainly wasn't supposed to use it for trading purposes. The CSRA, the section that the confidentiality clause is in, is specifically entitled Restrictions on Use and Disclosure. And it lays out that Dr. Kaczynski needed to keep the information in strict confidence. And then it really goes on to say these are just the very few times that he can, when necessary, share the information with others. And so I would say two things. One, it is similar to Falcone in the sense that there is this confidentiality agreement. But even more so, the terms of the CSRA are broader than my, than the defendant necessarily explains in the brief. The district court here charged trust and confidentiality or trust and confidence in the conjunctive. But it didn't clarify whether they were synonymous, indicated different concepts. And this is all complicated by the fact that the SEC's reg apparently treats them in the disjunctive. What are we to make of all of this? What's required? Do you have to prove these two concepts, just one of them? What's your position on what your burden was and what was proved here? Great. Well, I think the jury instructions say trust and confidence. It has the and in there. And we think that we proved that it was trust and confidence. I don't think that those two concepts are so distinct that they can't come from the same source so that you can't have trust and confidence arise from a duty of confidentiality. Like Your Honor had said earlier, when you entrust someone with confidential information, when you entrust them to keep it to themselves, to not share it, you are in fact trusting them. But Ms. Shapiro says that's what her client did. The question is whether it also prevented them not only from not telling anybody else about it, but from not trading on it to their own advantage. And where does that obligation come from here? Well, I think what the courts have said in the misappropriation theory is that when you have a duty of trust and confidence, you can't then use the owner's information to your own benefit. And so that is what Dr. Kaczynski did. Once you recognize that the Second Circuit has said that there is a duty of trust and confidence based on a confidentiality agreement, then the violation exists because he basically uses the regatto's information to profit for himself, which is what the misappropriation theory essentially is. You don't necessarily have to have a civil case. One could debate whether or not he, in fact, violated the confidentiality agreement, but that's certainly not necessary here. What the court has said is that the duty of confidentiality suffices for the duty of trust and confidence, and that breach is when he uses regatto's information to benefit himself. We don't know that there was a breach of contract, do we? Like I just said, Your Honor, you can debate as to whether or not there was a breach of contract. I would say a few things on that. One, the government tried to prove, we think it proved at trial. Did anyone ever attempt to assert a breach of contract? To my knowledge, regatto did not attempt to assert a breach of contract. Regatto didn't really exist at this point in time. After the announcement that the drug killed somebody, it was acquired by another company, and that was really the end. Now, was he ever told that he could not trade securities on the basis of confidential information? At no trainings given by regatto, was he told or trained with respect. And it wasn't in the agreement? It was not in the agreement, Your Honor, no. These are sophisticated lawyers drafting these agreements. Why wouldn't it have been included pro forma? I mean, I can't speak to what was inside the lawyer's head. He wasn't a witness at trial, but I will say that there was Dr. Zelenkovsky who testified at trial and said specifically that they never even thought that a doctor would trade on this type of information, that that wasn't even in their minds at the time. It was so obvious to them that a doctor wouldn't. I think also when you look at the CSRA and you look at that clause, it does say restrictions on use. And so I think maybe it was just poor drafting. It does seem a little unusual or problematical to prosecute someone on the basis of what we assume everyone knows, but it's not incorporated in an agreement. Well, Your Honor, I think that that's where willfulness comes in for 10b-5. And so I think that we had sufficient evidence to show willfulness. We had our brief lays out at least four pieces of evidence. The first being Dr. Kaczynski's own statements where he specifically states that he didn't feel good about what he was doing at the time. And I just want to make that clear with respect to that statement that he was talking about back when he made the trade. So it goes to his intent at the time. And then also both greed and stupidity motivated him to do the trade. The other second piece of evidence is the facts of sort of the facts of the trade that he was supposed to keep this evidence in strict confidence, yet he traded on it twice and once after he learned that someone died during the drug trial. It just feels icky. And if I can finish my last two points, I know my time is up. But I think the third piece of evidence with respect to willfulness is the fact that he didn't, he wasn't forthright about his ownership in the stock originally when he made an application to St. Vincent's. He signed the form on the very day that he had then bought some stock, but he also owned 4,000 shares. And I know that my adversary, I know that the defendant has said over and over that there was evidence that he didn't fill out that form. That is just not the case. That is just not the case. There was an email where Maria Kapoza, who works for Dr. Kaczynski, said she was filling out, I think, her forms, not his forms. It was weeks before. We have no idea what specific forms it was. But what we do know, what actually is in evidence, is on October 16th, he signed a form to St. Vincent's that said he did not own any stock, and he did. He owned 4,000 shares. And on that day, maybe before or after he signed it, that part we don't know, he bought some more. And then he signed a form for Regato, which said he didn't own $50,000 worth of Regato stock. And it was true when he signed it, but he was supposed to promptly tell Regato when he overcame that 50,000 threshold, and he didn't. He didn't. When it was 64,000 in February 2014, he didn't tell them. When it was $250,000 worth of Regato stock in June of 2014, he didn't share it. He only shared it when Regato came to him when the trial was over and asked, can you fill out this form? And then the fourth piece of evidence with respect to willfulness is the fact that he was an experienced trader. He had a couple of trading accounts at Fidelity. He had over $11 million worth of investments. He traded in things like options, complicated options. And so I think that that is a fair inference for the jury to make with respect to sufficiency. And like I said, I know my time is up. Let me ask you about the so-called equipoise rule. What's your view on that rule? We think the equipoise rule does not apply here, and we think that's clear from this Court's precedent. Other circuits have disavowed it, and this Circuit has been clear that it is of no matter to the sufficiency analysis because it is the task of the jury, not the Court, to choose among competing references. And that's Eckhart and, I think, Judge Raggi wrote that opinion. So the government here thinks that the equipoise rule is not appropriate in this instance. Thank you, Your Honors. Just a couple of points. First of all, the government is sort of suggesting that Dr. Kaczynski might have breached the contract, and they're suggesting that there is something in the contract that bars him from trading, and that's absolutely false. And if you look at page A234, the section restrictions on use and disclosure, there is no restriction or mention of not using the information for trading purposes. It says, Facility and principal investigators shall maintain in strict confidentiality all of the confidential information and will disclose confidential information only in certain circumstances. Again, talking about disclosure. And in stark contrast to that, we have not only the two contracts that we've cited in the briefs with respect to the other parties, the parties that were entrusted with truly confidential matter throughout the course of the trial, the DSMB and the C5 research, but we also have the original confidentiality agreement that was superseded by the contract that governed during the trial, which specifically says, in stark contrast, that he shall not use, disclose, or exploit such proprietary information for his company's own benefit or the benefit of any other person or entity. And that provision is not in the governing contract. And as Judge Cabranes pointed out, these contracts are drafted by lawyers for the drug company. There's not even any negotiation. So that's what the contract says. The contract was definitely not breached. So what does confidentiality mean here? What is it that's supposed to be kept confidential? Or how is it supposed to be kept confidential? Well, I think that what... From whom? What it means is, in ordinary parlance, essentially that he was not allowed, to the extent he learned any confidential information in connection with his role, that he was not allowed to disseminate that information to third parties. And he did not do that. Now, I also want to just very briefly, I know the red light is... But I do want to address Chessman and Falcone. I think that my adversary is reading Chessman out of context and that Chessman is very clear that even though there is a statement in the case that the government seizes on and that is cited in Falcone and Afriye that says that that case might have been different had there been a confidentiality agreement, that's in the context of a husband and wife. And the case elsewhere goes on at great length to go to explain that, particularly in a criminal case, it's extremely important that there has to be a narrow definition of what the duty is and it has to be a fiduciary duty or its functional equivalent, meaning a relationship sharing the essential characteristics of a fiduciary association. Why isn't it a functional equivalent? Are you saying that the, you know, the traditional common law relationships that imply a fiduciary relationship without a contract, that somehow the law is frozen and that it's not possible to develop other circumstances in which one can infer the existence of a fiduciary relationship? Well, I think what I'm saying is that the Chessman case says that these particular factors have to exist which don't exist here because the relationship is defined by the contract. He's an independent contractor. He... You're an independent... And... You're an independent contractor as a lawyer. You couldn't go... You didn't sign any contract. Are you saying that you could take information that you learned from your client and go profit from it by... No, but I have ethical obligations under the law not to do that as well. And there's a clear law that governs my conduct in this situation and I'm an agent for my client. You know, when I'm signing contracts for him or speaking to this court on his behalf, I'm his agent. Dr. Kaczynski was not Rigato's agent. Acting as an agent? No, he wasn't and that was expressly disclaimed in the contract. The contract says he's not an agent. That's my point. And his duties are defined by the contract. Now... Right, but he's a doctor who also operates under ethical obligations. Let me just finish and then I'd like you to address something. He is conducting a medical trial and the notion that he would take information that the trial is going to be either successful or in this case going to go nowhere and trade in the market on it seems to me to be both unethical as a matter of his conducting the trial and also a problem for the market. He's corrupting the market by trading on information that's not generally available and that has been entrusted to him for a very particular purpose. Your Honor, I'm not here to... You know, he didn't just spare his own losses. He sold short to profit from this and that's all very problematic here. I understand that it's... The government called it icky but the question isn't whether it's icky. The question is whether the man should be sent to prison. I think what they so characterized was his trading on information that someone had died. What I'm saying is he didn't just seek to minimize his own losses. He looked to profit from this by selling short when no one else knew the problems. I understand... When the market didn't know the problems. If I could just take a step... Let's just take a step back. I think it's important to put this case into the context of Section 10B and what it is and what it isn't. And maybe we'd all like there to be an insider trading statute that spells out very specifically when insider trading is illegal but there isn't one and the Supreme Court has been very clear in the four cases in which it's decided this that insider... that the 10B is not here to make the markets fairer. That it only targets deceptive conduct and that mere insider trading is not deceptive unless the person who traded had a duty to disclose in the context of a classical case to the shareholders, in the context of a misappropriation case to the source of the information before trading. So, in fact, under the law hypothetically speaking if Dr. Kaczynski had a duty he could have just told Rigato he was going to trade and trade it at least under... and that wouldn't be fraud and I'm not saying that he had a duty but I'm just trying to illustrate the point is that the Supreme Court has repeatedly said that people do not have a general duty not to trade on inside information and I understand why the Court finds the conduct troubling but the question here is was this a crime? Was it fraud under 10B? And I respectfully submit it wasn't. Judge Kobrams can I say one other thing? I just wanted to briefly address the Falcone case that case Judge Korman has a question Oh, I'm sorry I didn't hear I'm sorry Do you want to go first? No, no The government cites Rule 10B-5-2 at page 28 of its brief which they say provides that a duty of trust or confidence exists whenever a person agrees to maintain information and confidence Yes, Your Honor and as we've briefed extensively we believe there are two problems with that argument Number one we think that to the extent it's applied in a context like this where the entire relationship is an arm's length contract spelled out in an arm's length contract that a confidentiality provision isn't enough using the term arm's length but finish finish what you want to say I'm sorry I mean that the point is that to the extent that that language is read as extremely broadly to cover any confidentiality provision it's inconsistent with 10B and the specifically delegated authority that the SEC got from Congress under Ernst & Ernst Feehoffelder O'Hagan and all the other case law that makes clear that the SEC can't define something as fraud that isn't otherwise fraud and and secondly we believe that even if that argument were rejected well there are two other levels of argument I don't want to repeat the briefs but we think that because it has criminal application Chevron doesn't apply and the rule of lenity applies and then furthermore that if if the rule is valid nonetheless if this Court were to find that that it wouldn't apply here because the SEC's intention wasn't to cover non-business relationships and the Ernst & Ernst case is really on point there because that in that case the Supreme Court was construing provisions of Rule 10B-5 that on their face seemed to allow for a negligence standard and nonetheless the Court looked at the regulatory history and other things to say that that that wasn't the standard I just want can I just make one point about about Falcone in in Falcone the the Court was very although the Court quoted that sentence in Chessman the Court said qualifying relationships are marked by the fact that the party in whom confidence is reposed was has entered into a relationship in which he or she acts to serve the interests of the party entrusting him or her with such information and then it goes on to analyze the facts of the case which I think are very different so the facts of that case were that the magazine had a relationship with this distributor and the misappropriator was an employee of the distributor the distributor had a policy that they couldn't disseminate the magazine they couldn't reveal what was going to be published and the misappropriator was actually in charge of enforcing that policy so he breached his duty to his employer and his employer's duty to the magazine when he tipped other people so I think it's a very different case there was no contract like this he was an employee and I respectfully submit that this case has unique facts that take it outside of the misappropriation theory you made one point about misappropriation that I need your help on you said that on a misappropriation theory all he had to do was tell the company that he was going to trade on the information and then he could have done it what case should we look at for supporting that the O'Hagan case makes that very clear and obviously what if the company had said to him oh no you're not you'll get us in trouble with the market you can't trade on the information and he could have said I don't have any contract obligation not to do that the argument you've been making to us I think that's true if you read that section of the O'Hagan case it's it talks about how in the context of that case which involved a law firm partner trading on a merger that his law firm had worked on the judge says it may be that there are other causes of action that the party whose information was used could bring but there is no fraud and no crime it's it's to be honest it's it's a strange doctrine but there it is that's what the Supreme Court says thank